UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                                          Plaintiff,<br><br>v.<br><br>TODAYS GROWTH CONSULTANT INC.<br>(dba "The Income Store")<br><br>and<br><br>KENNETH D. COURTRIGHT, III,<br><br>                                          Defendants. | Civil Action No. 19-cv-08454<br><br>Hon. Andrea R. Wood<br><br>Magistrate Judge Jeffrey Cummings |

## SUPPLEMENTAL DECLARATION OF PATRICK L. FEENEY

I, Patrick L. Feeney, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a Senior Counsel with the Division of Enforcement of the Securities and Exchange Commission ("SEC"). I am a member in good standing of the Maryland Bar.

2. I submit this Supplemental Declaration in further support of the SEC's Motion for Preliminary Injunction (Docket Nos. 12, 20, 27) and as a supplement to the Declaration of Patrick L. Feeney, dated December 27, 2019 (Docket No. 14).

3. This Supplemental Declaration based upon personal knowledge and/or information and belief. The sources of my knowledge and information and the bases of my belief are 700+ Consulting Performance Agreements produced by the Receiver to the SEC on January 6, 2020.

1

**The 700+ Consulting Performance Agreements**

4.     On December 27, 2019, when the SEC filed this Action, the SEC was in possession of 25 Consulting Performance Agreements, which I reviewed and summarized in my Declaration (Docket No. 14).

5.     On December 30, 2019, the Court appointed a receiver over Defendant Todays Growth Consultant Inc. ("TGC").

6.     On January 6, 2020, the Receiver provided the SEC with 776 Consulting Performance Agreements entered into between Todays Growth Consultant Inc. ("TGC") and investors from December 2009 through December 2019. The SEC staff was told these were the contracts that were active as of December 13, 2019, the date on which TGC sent investors a notice of a 4-month moratorium on payments, and that all investors associated with these 776 contracts received a moratorium notice.

7.     With the assistance of other SEC staff, I reviewed each Consulting Performance Agreement for purposes of, among other things, determining if the 700+ contracts were different from the 25 that I had previously described in my Declaration.

8.     Although there is more than one version of the Consulting Performance Agreements, the following material provisions that were present in the 25 Consulting Performance Agreements are the same across 95% of the 776 Consulting Performance Agreements that the Receiver recovered from Defendant TGC and the SEC reviewed. In over 95% of the Consulting Performance Agreements, investors are required to pay an "Upfront Fee" but otherwise rely exclusively on the effort of TGC to buy, build, host, and maintain the underlying websites. Every Consulting Performance Agreement provided for a split of website revenues between TGC and the investor; but, in over 95% of the agreements (100% for

agreements entered into as of January 1, 2017 or later), TGC guarantees the investor a minimum rate of return that has no relationship to website performance. TGC represents it is solvent and able to satisfy its guarantee obligation and it represents that 100% of an investor's Upfront Fee will be used to buy, build, host, and maintain the investor's websites.

9. The Consulting Performance Agreements require investors (usually referred to as "future site partners" or "future site owners") to pay an "Upfront Fee," which, in the contracts reviewed, ranges from $5,000 to $4,000,000:

| Upfront Fee | Number of Contracts in Range |
|---|---|
| < $50,000 | 50 contracts |
| $50,000 – $99,999 | 125 contracts |
| $100,000 - $249,999 | 485 contracts |
| $250,000 - $499,999 | 74 contracts |
| $500,000 - $999,999 | 35 contracts |
| $1,000,000-2,499,999 | 5 contracts |
| $2,500,000-$4,000,000 | 2 contracts |

10. More than 95% of the Consulting Performance Agreements require TGC to acquire or build a revenue-generating website or websites for the investor and then to develop, market and maintain the websites.

11. More than 95% of the Consulting Performance Agreements provide that the investor's sole responsibility is to fund the purchase or build-out of the initial website(s) through payment of the Upfront Fee. Some agreements also require the investor to provide TGC with administrator passcode privileges to the website.

12. More than 95% of the Consulting Performance Agreements (100% of those entered into as of January 1, 2017 or later) provide for a 50/50 split of website revenues between TGC and the investor but also provide the investor with a minimum guaranteed rate of return that is independent of website performance. The guaranteed minimums range from 10% to 30% of the investor's Upfront Fee.

13. More than 95% of the Consulting Performance Agreements reflect TGC's representation and warranty that "[TGC] is in satisfactory financial condition, solvent, able to pay its bills when due and financially able to perform its contractual duties hereunder."

14. More than 95% of the Consulting Performance Agreements contain a use of funds provision in which TGC represents that it "shall use the Upfront Fee *exclusively*" for "purchasing" or "building" the investor's website, or for the "purchase, hosting, maintenance, and marketing" or "the building, hosting, maintenance, and marketing" of the investor's website.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 7, 2020,

PATRICK L. FEENEY

4

CERTIFICATE OF SERVICE

I, SUZANNE J. ROMAJAS, certify that, on February 7, 2020, I caused the foregoing Supplemental Declaration of Patrick L. Feeney in Further Support of Plaintiff's Motion for Preliminary Injunction to be served by CM/ECF, upon all parties and their counsel of record.

      /s/*Suzanne J. Romajas*
Suzanne J. Romajas
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549-5971
202-551-4473

Attorney for Plaintiff