EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

SECURITIES AND EXCHANGE COMMISSION, :
:
          Plaintiff,   :
:
      v.   :
:   Civil Action No. 1:19-CV-08454
TODAY'S GROWTH CONSULTANT, INC.   :
(dba THE INCOME STORE)   :
:
and   :
:
KENNETH D. COURTRIGHT, III,   :
:
        Defendants.   :
---

LEGAL NOTICE OF
CLAIMS ADMINISTRATION PROCESS
**AND PARTIAL PLAN OF DISTRIBUTION**

**IF YOU ENTERED INTO A CONSULTING PERFORMANCE AGREEMENT OR SOFTWARE DEVELOPMENT AGREEMENT ("INVESTOR") WITH DEFENDANT TODAY'S GROWTH CONSULTANT, INC. d/b/a THE INCOME STORE ("TGC")**

**YOU MAY BE ENTITLED TO RECEIVE A TRANSFER OF A WEBSITE OR PAYMENT FROM ASSETS RECOVERED IN THIS SEC ENFORCEMENT ACTION.**

**OR**

**IF YOU TRANSFERRED FUNDS TO OR ARE OTHERWISE A CURRENT CREDITOR OF TGC ("CREDITOR"),**

**YOU MAY BE ENTITLED TO PARTICIPATE IN MONETARY RECOVERY FROM THE ASSETS RECOVERED IN THIS ACTION**

**DEADLINE FOR ALL INVESTORS AND CREDITORS TO SUBMIT CLAIMS TO THE RECEIVER: JANUARY 14, 2021.**

[Deleted: _____.]

**INTRODUCTION**

On December 30, 2019, the Court entered a Temporary Restraining Order Freezing Assets and Imposing Other Emergency Relief [ECF No. 20] ("TRO") and an Order Appointing Receiver [ECF No. 19] ("Appointment Order") in this Securities and Exchange Commission ("SEC") enforcement action. The TRO ordered all of the Defendants' assets frozen to preserve the *status quo*. *See* ECF No. 20 at pp. 6-7.

The Appointment Order requires the Receiver to marshal Defendants' assets and provide the Court with quarterly reports on the status of the Estate. *See* ECF No. 19. In her Initial Status Report the Receiver advised the Court that she would provide a proposed claims process and partial plan of distribution of the assets of the Estate by February 28, 2020. *See* ECF No. 45. Accordingly, the Receiver proposed the Claims Process and two-part distribution plan detailed herein.

On February 28, 2020, the Receiver filed with the Court a Motion to Approve (A) Noticing and Claims Administration Process and (B) Partial Plan of Distribution [ECF No. 53]. On November 30, 2020, the Court entered an Order [ECF No. 109] approving the Noticing and Claims Administration Process and Partial Distribution Plan (described herein), pursuant to which the "Eligible Claimants" (defined below) shall file the Proof of Claim and Release Form attached hereto for (i) turnover of the website(s) and/or domain name(s) URL assigned to such Investor (the "Website(s)"); (ii) recovery of the amounts of their net losses of principal paid to TGC pursuant to a Consulting Performance Agreement or Software Development Agreement with TGC, or (iii) recovery of the amount that TGC owes them for goods delivered and/or services performed. Further, the Court-approved Partial Distribution Plan authorizes and directs the Receiver to create a settlement fund (the "TGC Fund"), and distribute the proceeds of such Fund, after payment of administrative expenses of the Receivership Estate, to each investor or creditor electing a monetary remedy for their claims against TGC determined to have an "Allowed Claim" (defined below) based on a later approved distribution method.

**SUBMITTING A CLAIM**

If you entered into a Consulting Performance Agreement or Software Development Agreement with TGC or provided goods or services to TGC, you may be an Eligible Claimant entitled to file a Proof of Claim, and you may have an Allowed Claim and, thus, be entitled to receive turnover of the Website(s) assigned to you **or** a distribution from the TGC Fund based on your net loss of the principal amount you paid to TGC pursuant to a Consulting Performance Agreement or Software Development Agreement, or the amount that TGC owes to you. If you are an Eligible Claimant, to obtain any distribution from the TGC Fund, you must fill out and submit to the Receiver the online Proof of Claim and Release form described below **ON OR BEFORE JANUARY 14, 2021.**

**Who is an Eligible Claimant?**

<u>Investors and Creditors</u> are eligible to participate in the Claims Process, and are encouraged to submit a claim, (i) if they entered into a Consulting Performance Agreement or Software Development Agreement with TGC and incurred a net loss of the principal amount paid to TGC during the fraud subject of this enforcement action as a result of having entered into one such Agreement; or (ii) if TGC incurred a debt to them that remains unpaid in whole or in part. Such Investors and Creditors are "Eligible Claimants" in this Claims Process.

**What is required to have an Allowed Claim?**

The claim of an Investor or Creditor will be allowed (an "Allowed Claim"), such that the Investor or Creditor will be entitled to receive either: (i) turnover of the Website(s) assigned to the Investor **or** a distribution based on that Investor's net loss of the principal paid to TGC pursuant to a Consulting Performance Agreement or Software Development Agreement with TGC, or (ii) a distribution based on the amount that TGC still owes to the Creditor, provided that the Investor or Creditor sufficiently demonstrates to the satisfaction of the Receiver through documentation and/or sworn statements, among other things:

(i) that such Investor (a) entered into a Consulting Performance Agreement or Software Development Agreement with TGC, (b) paid an up-front fee to TGC, and (c) did not receive from TGC or their affiliates any amount, or received an amount less than the amount they had paid to TGC, and thus incurred a net loss;

OR

that TGC incurred a debt to such creditor, for goods or services that such creditor provided to TGC and such debt remains unpaid in whole or in part;

AND

(ii) that such Investor or Creditor is not: (a) Defendant Kenneth D. Courtright, III, or a member of his family, including without limitation a spouse, child, parent, sibling or parent or sibling of Defendant Courtright's spouse, or any entity directly or indirectly controlled by them or a trust established for their benefit; (b) a person who was employed by or contracted to TGC or Defendant Courtright at any time from December 2009 through December 2019 (the "relevant period"); (c) a person or entity affiliated with TGC or Defendant Courtright during the relevant period, including without limitation Conklin Web Properties; and (d) a person or

3

        entity that promoted TGC or its investment contracts and was directly or indirectly compensated for such promotion.

AND

(iii)    that the total amount of funds that such Investor paid to TGC exceeds the total amount of funds that TGC or their affiliates transferred back to such creditor, or that the total value of the goods or services that the creditor provided to TGC exceeds the total amount that TGC paid to such creditor for those goods and services.

      The Receiver may consider other factors in determining whether a claim is an Allowed Claim.[1]  If an Investor or Creditor cannot prove all three of the foregoing factors, that Investor's or Creditor's claim will be disallowed and such Investor or Creditor will receive no turnover of an assigned Website(s) or monetary distribution.[2]

      If an Investor or Creditor makes the requisite showing regarding his or her claim and the Receiver determines that such claim is an Allowed Claim, then and only then, will the Investor or Creditor be entitled to a recovery from the Estate.  For Investors requesting turnover of an assigned Website(s), the Receiver will require that they confirm the name of Website(s), and the total amount of funds they received from TGC pursuant to the Agreement they entered into with TGC.  The name(s) of the Website(s) assigned to each Investor and the total amount that each Investor received from TGC will be listed on the claim form that is provided to each Investor with this Legal Notice to the extent known.  Each Investor will be asked to (i) confirm such information in the claim form, (ii) revise the amount received, as appropriate, (iii) add any other Website the Investor believes was assigned to him or her, and (iv) provide the Consulting Performance Agreement(s) or Software Development Agreement(s) he or she entered into with TGC if requested.  If an Investor does not know the total amount he or she received from TGC and/or the name(s) of the Website(s) assigned to him or her, such Investor may contact the Receiver to confirm such information.[3]

---

[1]  Notwithstanding these factors for determining whether a claim should be allowed, the Receiver will analyze each claim individually, the circumstances surrounding each Investor's payment to and involvement with TGC and each Creditor's dealings and relationship with Defendants, and the Receiver reserves the right to object to and seek to disallow any claim.

[2]  To the extent an Investor received funds from TGC in excess of such Investor's total investment with or payment to TGC, such that the Investor profited from the fraud, the Receiver reserves the right to pursue a claim against such Investor for the return of the profit received and any other appropriate relief.

[3] Investors may also. request data concerning performance of their "assigned" Website(s) for purposes of making the election.

4

The Investor's claims for turnover of Websites will be processed first and the Websites will be turned over as soon as practicable after Investors have made an Allowed Claim for the respective Websites of which they seek turnover, without further order of the Court.

**Deleted:** Investor'

If an Investor elects monetary distributions, the Receiver will calculate the amount of such Allowed Claim by subtracting the total amount of funds that such Investor received from TGC from the total amount that such Investor paid to TGC, irrespective of the success or failure of the particular investment or terms in any agreement underlying the debt providing for interest or fees. The Receiver will propose a method for the monetary distribution for approval by the Court after sufficient assets have been recovered and/or liquidated to warrant a distribution.

**Information to assist potential claimant in determining whether to elect to receive the websites assigned to them or monetary distributions.**

The following information regarding potential claims, potential claimants, the websites and income they generate, cash-on-hand and other assets in the Estate, and the timing of asset liquidation, includes estimates which the Receiver provides to the best of her knowledge based on all of the information she has received as of the date of this Legal Notice.

- Total amount of money Defendants received in investments and loans: $153,570,199.88 ($141,518,356.00 from investors and $12,051,843.88 in loans and merchant cash advances).

- Total amount owed to vendors and other creditors: $2,634,968.27.

- Total amount of payments Defendants made to investors and creditors: $55,056,493.35 ($43,569,806 to investors (2013 – 2019) and $11,486,687.35 to lenders and merchant cash advance providers).

- Total value of potential claims against the Estate: $101,148,674.80.

- Total number of potential claimants: 697 investors and 109 creditors.

- Total number of websites the Receiver is holding on behalf of the Estate: Approximately 3,130.

- Mean monthly income from each website the Receiver is holding on behalf of the Estate since the date on which the Receiver took control of those websites (December 30, 2019): *See* attached Website Revenue Report. If the website is not listed, the amount of income if any is *de*

5

- *minimis* (less than $5). Investors may contact the Receiver to request additional information regarding the websites.

- Median monthly income from each website the Receiver is holding on behalf of the Estate since the date on which the Receiver took control of those websites (December 30, 2019): *See* attached Website .

- Total amount of cash-on-hand the Receiver is holding on behalf of the Estate: $183,579.82.

- The Estate's other assets:

    - Approximately 3,130 domain names (value currently unknown);
    - Revenues generated by operational websites;
    - Claims against third parties, affiliates and insiders of the Defendants to recover investor money transferred in voidable transfers for the benefit of the Estate (value currently unknown but total claims exceed $36 million); and
    - Additional personal property located in TGC's office, including computers and related equipment, office equipment, and inventory for fulfillment of certain e-commerce websites not liquidated by auction sale (precise value currently unknown).

- The Receiver estimates that she will complete the liquidation of the Estate's domains and websites that remain in the Estate after the websites are transferred to the investors who elect to receive them in lieu of a monetary distribution, by August 2021. An interim distribution may be possible in 2021.

- The Receiver estimates that she will conclude her efforts to pursue the Estate's claims against third parties, affiliates and insiders, through litigation and otherwise, in 2022 with a final distribution thereafter.

**Information, procedures, and requirements for transferring websites to investors.**

Investors who will elect to receive websites in lieu of a monetary distribution should consider the following information, procedures and requirements and take all necessary and appropriate steps to prepare for the website transfer: It is not possible to transfer ownership of certain affiliate accounts, including Google Adsense, Amazon Associates, and others. The new website owner will need to apply for these accounts separately and approval is at the discretion of the affiliate provider. Previous approval of the website does not guarantee future approval.

- The Receivership Estate and its employees will not be permitted to create, access, or use accounts that are transferred to and owned by investors. Any investor receiving a website transfer will be responsible for creating and maintaining any necessary accounts or services both during the website transfer process and afterwards, and the investor will need to complete tasks necessary to effect the transfer itself.
- New website owners will be responsible for replacing any affiliate codes and links on transferred websites.
- Income Store websites were not fully standardized. The list of hosting, registrar, CMS, website content, and any related accounts or services will be unique to each website.
    - The primary CMS used for Income Store websites is Wordpress. However, Income Store also employs Webflow, Ruby on Rails, Drupal, custom code, and others for certain websites.
- It is highly recommended that any investor electing to receive a website transfer, who is unfamiliar with web hosting and website management, consult or employ a professional in these areas, especially concerning website security and proper handling of visitor PII and PCI compliance, where applicable. The Receivership Estate's professionals can work with any professional retained by the investor to transfer the websites as smoothly as possible under the circumstances.

**How does an Eligible Claimant submit a Claim?**

To submit a claim and participate in the Claims Process and Distribution Plan, you must fill out and submit the Proof of Claim and Release Form, attached to this Legal Notice and posted on the website created for this receivership located at this URL: incomestorereceivership.com and agree to and sign the release of all claims contained therein. The Proof of Claim and Release Form requests information required to participate in the Claims Process and to receive turnover of a Website or a distribution from the settlement fund if you are determined to have an Allowed Claim. And, you will be required to submit all requested supporting documentation with your Proof of Claim and Release Form. Claims that lack requested supporting documentation will not be considered. For technical support in completing the Proof of Claim and Release Form, please contact the Receiver's office at the e-mail addresses and telephone number set forth below.

You may obtain information regarding the claims process by:

- Visiting the websites for this Receivership (www.incomestorereceivership.com) and the Receiver's counsel (www.dvllp.com).
- Submitting questions by mail to the Receiver at Damian & Valori LLP, 1000 Brickell Avenue, Suite 1020, Miami, Florida 33131.
- Sending an email to the Receiver at **incomestore@dvllp.com**.
- Telephone number: 305-542-4410.

Please return completed Claims Forms to the following addresses:

- By email – IncomeStoreClaims@dvllp.com
- By physical mail – Damian & Valori LLP, 1000 Brickell Avenue, Suite 1020, Miami, Florida 33131

**DEADLINES**

| | |
|---|---|
| December 15, 2020 | Deadline for Receiver to send this Notice and the attached Proof of Claim form to Potential Claimants |
| January 14, 2020 | Claims Bar Date – Deadline for Claimants to Submit Claims to Receiver. Claimants have until this Claims Bar Date to return the completed Proof of Claim and Release to the Receiver. Any completed Proof of Claim and Release not received by the Receiver or postmarked by this Claims Bar Date will be barred, and claims postmarked after the Claims Bar Date will not be allowed except for good cause shown. |
| February 3, 2020 | Receiver's Initial Determination of Allowed Claims - Deadline for Receiver to send to Claimants the Receiver's Initial Determinations of their Claims. The Receiver will have until this date to approve or reject, in whole or in part, all claims received. In the event the Receiver rejects any claim, in whole or in part, the Receiver will apprise the claimant, via first class mail and/or email of such rejection of the claim, the basis for the rejection, and the process for appealing such rejection. |

Margin comments:
- Deleted: _____, 2020 Notice of Claims Process sent out
- Deleted:
  - _____, 2020 Claims Bar Date
  - _____, 2020 Receiver's Initial Determination Date
  - _____, 2020 Investor Deadline for Appealing to Receiver
  - _____, 2020 Receiver's Final Determination Date
  - _____, 2020 Investor Deadline for Appealing to the Court
  - _____, 2020 Receiver Response to Appeals Deadline
  - Receiver Files Motion to Approve Monetary Distribution
  - TBD (based on completion of asset recovery phase)

| | | |
|---|---|---|
| March 5, 2020 | Claimants' Request for Reconsideration of Receiver's Initial Determination - Deadline for Claimants to submit to the Receiver an Appeal of the Receiver's Initial Determination of their Claims. Any claimant whose claim is rejected by the Receiver, in whole or in part, may request that the Receiver reconsider that denial by sending the Receiver a letter seeking a reconsideration, which must be received by the Receiver or postmarked by this date and must state the basis of the claim and the claimant's response to the Receiver's notice of rejection. | |
| March 15, 2020 | Receiver's Final Determination – Deadline for Receiver to send to Claimants the Receiver's Final Determinations of their Claims. The Receiver will have until this date to reconsider any request by any claimant who claims was initially rejected by the Receiver, in whole or in part, and to apprise the claimant, via first class mail and/or email, of the Receiver final determination of the claimant's claim. | |
| April 4, 2020 | Claimants' Appeal of Receiver's Final Determination - Deadline for Claimants to file an Appeal with the Court of the Receiver's Final Determination of their Claims. Any claimant whose claim was finally rejected by the Receiver, in whole or in part, may appeal the Receiver's rejection of the claim to the Court by filing with the Court an Appeal of the Receiver's Final Determination, which must be received by the Receiver or postmarked by this date and must state the basis of the claim and the claimant's response to the Receiver's Final Determination. | |

| | |
|---|---|
| April 24, 2020 | Receiver's Response to Appeals - Deadline for Receiver to file with the Court the Receiver's Responses to any Appeals filed by any Claimants. The Receiver has until this date to file responses to all appeals that claimants file with the Court. After the Receiver has filed her responses, the Court may make a final determination or may set the matter for hearing. A final determination by the Court is final for all purposes. There shall be no further appeal of such proceedings. |
| TBD (based on completion of asset recovery phase of receivership) | Receiver's Deadline to file with the Court a Motion to Approve Monetary Distributions to Claimants with Allowed Claims |

10