UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, :<br>:<br>Plaintiff, :<br>:<br>v. :<br>:<br>TODAY'S GROWTH CONSULTANT INC. :<br>(dba THE INCOME STORE) :<br>:<br>and :<br>:<br>KENNETH D. COURTRIGHT, III, :<br>:<br>Defendants. :<br>: | Civil Action No. 1:19-CV-08454 |

## RECEIVER'S TWELFTH STATUS REPORT

Melanie E. Damian, the court-appointed receiver ("Receiver") in the above-captioned enforcement action ("SEC Enforcement Action"), submits her twelfth status report concerning the status of the Receivership, established pursuant to the Court's Temporary Restraining Order Freezing Assets and Imposing Other Emergency Relief [ECF No. 20] ("TRO") and Order Appointing Receiver ("Appointment Order") [ECF No. 19]. This interim report sets forth the Receiver's activities and efforts to fulfill her duties under the Appointment Order for the period from October 1, 2022, through December 31, 2022 (the "Reporting Period").

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................... | 3 |
| II. | PROCEDURAL BACKGROUND .......................................................................... | 4 |
| III. | STATUS AND ACTIVITIES OF THE RECEIVERSHIP AND SUMMARY OF TGC'S OPERATIONS ..................................................................................... | 6 |

| | | | |
|---|---|---|---|
| | A. | *Maintaining, Reducing Expenses, and Marketing for Sale Remaining Assets of the Estate, Transferring Assets Related to Websites to Purchasers, and Resolving Issues with Certain Transferred Digital Assets* ........................................................................... | 7 |
| | B. | *Responding to Investor Inquiries Regarding Court-Approved Claims Process* ................................................................................... | 8 |
| | C. | *Pursuing Recovery Claims Against Third Parties, Affiliates, and Insiders* ................................................................. | 9 |
| | D. | *Assistance of Receiver's Forensic Accountant and Tax Consultant* ..... | 10 |
| | E. | *Courtright's Criminal Proceeding*.......................................................... | 11 |

| | | |
|---|---|---|
| IV. | CASH ON HAND AND ACCRUED EXPENSES OF ESTATE .................................. | 12 |
| V. | DISBURSEMENTS OF ESTATE ............................................................................ | 13 |
| VI. | KNOWN PROPERTY OF THE RECEIVERSHIP ESTATE ........................................ | 14 |
| VII. | KNOWN CREDITORS OF THE RECEIVERSHIP ESTATE ....................................... | 15 |
| VIII. | RECOMMENDATION FOR CONTINUATION OF RECEIVERSHIP AND CONCLUSION ....................................................................................................... | 16 |

I.  **INTRODUCTION**

Since her appointment on December 30, 2019, the Receiver, with the assistance of her retained professionals, including her lead counsel, local counsel, and forensic accountants, has worked diligently to continue to fulfill her duties and obligations as set forth in the Appointment Order and to preserve the assets and records of the Receivership Estate ("Receivership Estate" or "Estate"). In particular, the Receiver took control of all known assets of Defendant Today's Growth Consultant Inc. d/b/a The Income Store ("TGC"), including but not limited to the many websites and domains owned by TGC, its business operations, and all other known assets. And the Receiver worked on identifying and marshaling all other assets of TGC, including without limitation funds held in bank accounts, funds transferred to or in the possession of third parties, and other personal property of TGC. The Receiver and her counsel also communicated with investors and answered inquiries regarding, among other things, the status of the SEC Enforcement Action, the Court-approved claims process and timing of initial investor distributions, the results of the sales of TGC's websites, domains and related digital assets, and the Receiver's efforts to recover assets from third-parties, insiders, and affiliates for the benefit of the Estate.

During the Reporting Period, the Receiver worked to reduce the Estate's monthly operating expenses to more efficiently administer and preserve the value of the Estate. To achieve this, the Receiver, among other things, reduced and eliminated unnecessary data storage costs and third-party subscription services associated with data hosting and domain renewal.

Moreover, the Receiver worked to transfer the few remaining digital assets associated with the websites and domains the Estate had sold during a prior reporting period. And, the Receiver continued to utilize the online digital asset broker, Afternic, to market for sale the remaining domains of the Estate.

Further, during the Reporting Period, the Receiver's counsel continued to respond to requests for documents and access to TGC records from counsel for Courtright in the criminal action against Courtright, attended hearings in that action to answer questions from or provide updates to the Court, and worked with the Receiver's IT vendors to provide access to the Estate's records maintained on the Relativity document management platform and/or copies of records from forensic images of certain hard drives not maintained on Relativity.

Finally, the Receiver continued to litigate the Estate's claims against third-parties, insiders, and affiliates of the Defendants who had improperly received significant recoverable transfers from TGC without providing reasonably equivalent value in exchange therefor and/or facilitated and assisted TGC and its principal Defendant Kenneth D. Courtright, III ("Courtright") to operate TGC as an alleged Ponzi scheme. In particular, the Receiver continued to advance the recovery actions, engage in discovery, and pursue expeditious resolutions of the Receiver's claims. During the Reporting Period, the Court heard and granted the Receiver's unopposed motion to approve a settlement and release agreement with an attorney who had provided services to TCG. *See* ECF No. 239.

## II.     PROCEDURAL BACKGROUND

The Appointment Order entered on December 30, 2019, among other things, directs the Receiver to file with the Court within thirty (30) days after the end of each calendar quarter her report and recommendations regarding the status and activities of the Receivership Estate and TGC's business operations during the prior calendar quarter. *See* ECF No. 19. In particular, the Receiver's quarterly status reports are required to include: (1) a summary of the operations of the Receiver; (2) a summary of cash on hand, accrued administrative expenses, and the amount of unencumbered funds in the Estate; (3) a schedule of the Estate's receipts and disbursements; (4) a

description of all known assets of the Estate; (5) a description of liquidated and unliquidated claims held by the Estate; (6) a list of all known creditors of the Estate; (7) a status of Creditor Claims Proceedings (once commenced); and (8) the Receiver's recommendations for a continuation or discontinuation of the receivership. *See* ECF No. 19 at pp. 21-22.

On January 30, 2020, as required under the Appointment Order, the Receiver filed her Initial Status Report, which described, among other things, the Receiver's activities and efforts to fulfill her obligations under the Appointment Order during the first thirty (30) days of the receivership. *See* ECF No. 45. Importantly, in her Initial Status Report, the Receiver concluded that TGC's business records confirm the allegations as set forth in the SEC's Complaint [ECF No. 1]. *See* EFC No. 45. Specifically, because TGC's revenue from all of the websites each month was significantly less than the monthly payment obligations to the investors and are thus not sufficient to cover both monthly payments to investors as well as TGC's monthly overhead expenses, the Receiver concluded that the long-term costs associated with maintaining and preserving the digital assets of TGC was not in the best interest of the Receivership Estate.[1] *See id*. Based on this conclusion and the Receiver's analysis of the equities of all interested parties, including the investors, the receipts, and expenses of TGC's operations and of the Receivership Estate, and likely recoveries of the Estate, the Receiver outlined her proposal to promptly seek Court approval for a claims process and partial distribution plan which provided for, among other things, the transfer of websites to investors electing to receive them in lieu of monetary

---

[1] Indeed, since her appointment, the Receiver has detailed in her quarterly status reports the significant expenses associated with merely maintaining the assets, including retaining a skeletal group of IT professionals and the ongoing carrying costs of the domains and websites and eventually, as a cost-saving measure, eliminating the outside IT group and moving the remaining day-to-day operations to the Receiver's in-house team. *See* ECF Nos. 45, 81, 101, 115, 127, 160, 172, 184, 202, 220, 233.

distributions. *See id*. On February 28, 2020, the Receiver filed her Claims Process Motion. *See* ECF No. 53. The Court granted the Receiver's Claims Process Motion on November 30, 2020 [ECF No. 109] and the Receiver implemented the plan as set forth therein.

The Receiver's subsequent status reports detailed, among other things, the Receiver's continued efforts to carry out her duties and obligations as set forth in the Appointment Order including, without limitation, her efforts to preserve, maintain, and recover the assets and pursue claims of the Estate. *See* ECF Nos. 81, 101, 115, 127, 160, 172, 184, 202, 220, 233, and 242 (supplementing 233).

### III. STATUS AND ACTIVITIES OF THE RECEIVERSHIP AND SUMMARY OF TGC'S OPERATIONS

The Receiver, with the assistance of her professionals, continues to perform all duties and obligations as set forth in the Appointment Order. During the Reporting Period, the Receiver focused her attention and resources on:

> (A) maintaining, reducing expenses for, and marketing for sale remaining digital assets of the Estate, transferring social media accounts related to websites to purchasers, and resolving issues with certain transferred digital assets;
>
> (B) responding to inquiries from, and addressing issues raised by, investors who participated in the Court-approved claims process regarding the digital assets they received in lieu of monetary distributions and/or the status of the SEC Enforcement Action and the Receivership;
>
> (C) continuing to litigate pending recovery actions against third-parties, insiders, and affiliates of TGC who received significant transfers from TGC without providing reasonably equivalent value, and/or facilitated and assisted TGC and Courtright to commit the alleged fraud that is the subject of the SEC Enforcement Action;
>
> (D) seeking Court approval of a settlement of the Receiver's claims against one former counsel for TGC and pursuing the Receiver's claims against another former counsel and a former accountant for TGC;

(E) working with her forensic accountant to analyze the reconstructions of accounts of TGC and perform damages calculations and other analyses to support the Receiver's claims against third parties, insiders, affiliates, and former professionals of TGC; and

(F) working with IT professionals to provide access to the Estate's Relativity databases of TGC records and copies of forensic images of other TGC records to Defendant Courtright in response to his requests in the pending criminal matter, *United States of America v. Kenneth D. Courtright*, Case No. 20-CR-77.

A. **Reducing Expenses, Maintaining and Marketing for Sale Remaining Assets of the Estate, Transferring Assets Related to Websites to Purchasers, and Resolving Issues with Certain Transferred Digital Assets**

During the Reporting Period, the Receiver continued to reduce the Estate's monthly administrative expenses by discontinuing unnecessary data preservation and cloud storage services previously needed to host TGC's emails and cloud data and not renewing the Estate's remaining domains that have market values less than the annual renewal fees. Further, the Receiver and her counsel continued to maintain and market for sale the Estate's remaining digital assets and worked to finalize the transfer of purchased websites and domains that had previously experienced errors while also searching TGC's preserved data for, and transferring to buyers, content including social media accounts related to those websites and domains.

As previously reported, the Receiver listed for sale and sold additional domains through the third-party broker service, Afternic. During the Reporting Period, the Receiver' counsel continued to monitor and respond to numerous price inquiries regarding the listed domains from potential buyers through the Afternic service, and, utilizing free valuation tools provided by Afternic's digital asset experts, the Receiver re-evaluated and strategically set individual prices for each domain.

### B. Responding to Investor Inquiries Regarding Court-Approved Claims Process

As previously reported, in accordance with this Court's Memorandum and Opinion Order granting the Receiver's Claims Process Motion [ECF No. 109], on December 15, 2020, the Receiver sent Claims Packages to 832 potential claimants (including government taxing agencies) via email and another 24 Claims Packages via U.S. Mail or Federal Express. Shortly after sending out the Claims Packages, the Receiver and her professionals began receiving, organizing, and processing completed claim forms that claimants had sent to the Receiver's email address established for the claims process (IncomeStoreClaims@dvllp.com).

Pursuant to her final determinations of investor claims, the Receiver approved claims for monetary distributions to investors totaling approximately $70,128,469.32, to former employees totaling approximately $12,780.60, and to creditors totaling approximately $1,118,248.04 ($760,552.17 of which is subordinated to the claims of investors pursuant to an agreed order). Of the 472 claims from investors, 33 investors elected to receive one or more of the websites that TGC had assigned to them and forfeit their right to monetary distributions from the Estate. Pursuant to the approval of these claims, the Receiver transferred 69 websites to the 33 investors and satisfied $7,890,102.70 in monetary claims against the Estate.

During the Reporting Period, the Receiver continued to regularly communicate with investors through the email accounts, telephone number, and Receivership website established to provide information to, and address the questions and concerns of, investors. In particular, through the email accounts established for the Receivership (IncomeStore@dvllp.com and IncomeStoreClaims@dvllp.com) and the telephone number set up soon after the commencement of the Receivership, the Receiver's professionals responded to investors' communications regarding (i) the Court-approved claims process and the status and timing of the eventual monetary

8

distributions, (ii) updated investor contact information, (iii) transferring websites, domains, and corresponding social media channels to investors pursuant to their elections to received same in lieu of monetary distributions in the claims process, (iv) the assets of the Estate sold at the online auction sale and directly to third parties and the results of the sales, and (v) the SEC Enforcement Action and Receivership in general.

### C. Pursuing Recovery Claims Against Third Parties, Affiliates, and Insiders

During the Reporting Period, the Receiver and her counsel continued to litigate the Estate's actions against third-parties, affiliates, and insiders, commenced during prior reporting periods, including by conducting discovery, working with her retained expert to finalize and serve expert witness reports, and preparing and responding to dispositive motions, in accordance with applicable pre-trial scheduling orders.[2]

Finally, during the Reporting Period, the Receiver and her counsel continued to work with third-parties, affiliates, and insiders to investigate each of their involvements with TGC and/or Courtright and to evaluate their ability to assist the Receiver in her pursuit of claims against other

---

[2] As detailed in the Receiver's prior Status Reports, to preserve the minimal funds in the Receivership Estate, the Receiver and her counsel did not bill the Estate for the formulation and litigation of these recovery claims. Rather, on September 16, 2020, the Receiver filed her Motion for Approval of Contingency Fee Arrangement for such claims. *See* ECF No. 99. And on November 5, 2020, the Court granted that Motion. *See* ECF No. 103. Additionally, pursuant to the parties' Stipulation and Order Concerning the Receiver's Payment of Expenses in the Ancillary Actions [ECF No. 228], the fees and expenses of the Receiver and Lead Counsel incurred in administering the Estate will not be paid from the net recoveries in the contingency fee cases until the conclusion of the receivership when, as part of the Receiver's final accounting, the Receiver will seek payment and reimbursement from the Estate of all outstanding fees and costs of the Receiver and her professionals (including all fees held back since the inception of the receivership), subject to a cost benefit analysis and final review by the SEC and the Court.

third-parties, affiliates, and insiders who received significant transfers from TGC and/or facilitated the fraud allegedly perpetrated by TGC and Courtright.

### D. Assistance of Receiver's Forensic Accountant and Tax Consultant

During the initial reporting period, the Receiver retained Kapila Mukamal ("Kapila") as her forensic accountant and tax consultant to assist her to fulfill her duties under the Appointment Order. Kapila assisted the Receiver with an in-depth investigation of TGC's former business operations, accounting and banking records, and transactions involving investors, creditors, third-parties, insiders, and affiliates.

During the Reporting Period, Kapila provided valuable support to the Receiver in both the enforcement action as the Receiver's retained forensic accountant and tax consultant as well as critically important advice and analysis as the Receiver's retained expert witness[3] in the Estate's recovery actions against former professionals, third-parties, insiders, and affiliates ("Ancillary Actions"). In particular, during the Reporting Period, Kapila prepared various analyses as requested by the Receiver and her counsel. Kapila continued to provide tax and litigation support services to the Receiver and counsel as follows:

- Reviewed and analyzed records from Bill.com and incorporated the information into the consolidated reconstruction of TGC many accounts.
- Provided litigation support in the Heartland Bank Ancillary Action and prepared various analyses as requested by the Receiver's counsel.

---

[3] Pursuant to the parties' Stipulation and Order Concerning the Receiver's Payment of Expenses in the Ancillary Actions [ECF No. 228] and the Court's Order granting same [ECF No. 229], the Receiver was authorized to retain Kapila as her expert witness in the Ancillary Actions *nunc pro tunc* to January 1, 2022. Further, the Receiver's Lead Counsel, Damian & Valori, LLP agreed to advance payment for all reasonable expenses incurred in connection with the Ancillary Actions, including the expenses of Kapila or any other retained expert(s) to manage the expenses of the Estate. ECF No. 228.

- attended and provided testimony in depositions for certain Ancillary Actions.

### E. Courtright's Criminal Proceeding

During a prior reporting period, the Receiver received requests from Courtright's counsel in the criminal proceeding styled *United States of America v. Kenneth D. Courtright*, Case No. 20-CR-77, to produce copies of certain of TGC's documents and data which the Receiver forensically imaged and preserved after her appointment. During the Reporting Period, the Receiver's counsel attended status hearings in the criminal proceeding to provide information and answer questions regarding the Receiver's providing access to and copies of various records of the Estate in response to Courtright's requests, while ensuring, consistent with the Court's ruling, that the Estate does not bear the financial burden of the production and access requests. And, the Receiver's counsel worked with the Receiver's IT professionals to provide access to the Estate's Relativity platform and copies of forensically imaged hard drives to Courtright's counsel.[4]

### F. Courtright's Challenges Against Receiver and Discovery Requests

On October 28, 2022, Courtright filed a motion to find the Receiver in violation of the Court's stay order and to dismiss the Receiver. *See* ECF No. 232. On November 1, 2022, the Receiver filed a response opposing the motion. *See* ECF No. 234. The Court denied Courtright's motion on November 2, 2022 [ECF No. 235], directed Courtright to file any objections to the Receiver's "unopposed" motion to approve settlement and release agreements, and scheduled a status hearing for December 7, 2022. *See* ECR No. 231. The Court further directed the parties to file a joint status report and scheduled a telephonic status hearing for December 7, 2022. *See* ECF 231. The parties filed a Joint Status Report pursuant to the Court's Order [ECF No. 235] on

---

[4] The IT professionals issue invoices directly to Courtright's counsel and the Receiver's counsel is assisting those professional to obtain payment from Courtright or his counsel as agreed.

November 9, 2022. On November 14, 2022, Courtright filed an objection to the Receiver's proposed settlement [ECF No. 231], and a Request for Production of Documents to the Receiver. *See* ECF No. 238. The Receiver and her counsel expended significant time and resources searching for and producing a substantial number of documents requested by Courtright and, on December 14, 2022, filed her Response and Objections to Courtright's Request, objecting to certain of Courtright's requests.

On December 6, 2022, the Court rescheduled the December 7, 2022 status hearing for December 13, 2022. *See* ECF No. 241. At the December 13, 2022 status hearing, the Court granted the Receiver's Tenth Interim Application for an Order Approving and Authorizing Payment of Fees and Expenses of Receiver and Her Professionals (the "10th Fee Application") [ECF No. 233] and Receiver's Eleventh Interim Application for an Order Approving and Authorizing Payment of Fees and Expenses of Receiver and Her Professionals (the "11th Fee Application"). *See* ECF No. 239. Additionally, at the December 13, 2022 status hearing, the Court granted the Receiver's unopposed motion to approve settlement and release agreement with one former counsel for TGC and to authorize payment of the contingency fee and costs to the Receiver's counsel [ECF No. 231]. *See* ECF No. 243. Finally, the Court scheduled a status hearing for March 1, 2023. *See* ECF No. 243.

On December 22, 2022, Courtright filed an Emergency Motion (the "Emergency Motion") for a Court order directing the Circuit of Cook County, Illinois to stay or vacate its order which Courtright alleged interferes with his property and assets in violation of the Order of the United States District Court for the Northern District of Illinois, Eastern Division. *See* ECF No. 244. On December 23, 2022, the Court scheduled a hearing on the Emergency Motion for January 3, 2023. *See* ECF No. 245.

## IV. ESTATE'S CASH ON HAND, EXPENSES, AND DISBURSEMENTS

As of the end of the Reporting Period (December 31, 2022), the Estate held a total of $1,091,523.88 in cash on hand, comprising, among other things, the net proceeds of the sale of the Estate's digital assets, funds generated from TGC's business operations (including residual website revenue deposited in TGC's operating accounts), and settlement funds received from third-parties, insiders, affiliates, and former counsel for TGC against whom the Receiver pursued claims. *See* Standardized Fund Accounting Report reflecting starting and ending balances, and receipts and disbursements, of the Receiver's fiduciary account, attached hereto as **Exhibit A**. The Receiver deposited such funds in her fiduciary account for the Receivership Estate at City National Bank in Miami, Florida.

During the Reporting Period, the Receivership Estate incurred administrative expenses in the form of fees and costs of the Receiver and her professionals for the work they performed in connection with fulfilling the Receiver's duties under the Court's Orders. On March 2, 2022, the Court entered the parties' Stipulation and Order Concerning Receiver's Interim Fee Applications that, among other things, set forth the timing and procedure for payment of the Receiver's and her professionals' outstanding administrative fees and further governing the protocol for application and payment of the Receiver's and her professionals' administrative fees set forth in all future fee applications. *See* ECF No. 191. In conformance with these procedures, the Receiver filed her 11th Fee Application [ECF No. 239]. On December 13, 2022, the Court granted [ECF No. 243] the Receiver's 10th Fee Application [ECF No. 223] and the Receiver's 11th Fee Application [ECF No. 239].

Further, during the Reporting Period, as authorized by the Court [ECF Nos. 103 and 243], the Receiver disbursed to her counsel $292,228.20 as the 30% contingency fee and $587.30 for

13

the expenses advanced in connection with pursuing the Receiver's claims against TGC's former counsel which resulted in a $974,094.00 settlement. Finally, the Receiver disbursed to information technology and document management vendors $21,900.04 for the preservation, searching, gathering, and production of various records of the Estate maintained on the Relativity document management platform and on external hard drives. *See* Exhibit A.

V. **KNOWN PROPERTY OF THE RECEIVERSHIP ESTATE**

As of the end of the Reporting Period (December 31, 2022), the Receiver was in possession, custody, or control of the following assets of the Receivership Estate:

- $1,091,523.88 in cash on hand in the Receiver's fiduciary account and TGC's operating accounts.

- Fewer than 2,000 domain names (precise value currently unknown).

- Claims and Judgments against third-parties, insiders, and affiliates (precise value currently unknown, however, in total the Receiver seeks approximately $35 million) for fraudulent transfers, aiding and abetting fraud and breach of fiduciary duty, and legal and accounting malpractice, including the following:

    o Claims against Heartland Bank & Trust Company; Case No. 1:20-cv-07819; Venue in the United States District Court for the Northern District of Illinois;

    o Claims against William Courtright and Courtright Consulting, Inc.; Case No. 2:20-cv-01012; Venue in the United States District Court for the Northern District of Illinois;

    o Claims against Messiah Lutheran Church; Case No. 1:20-cv-07817; Venue in the United States District Court for the Northern District of Illinois;

    o Claims against Pepperdine University; Case No. 1:21-cv-02371; Venue in the United States District Court for the Northern District of Illinois;

    o Claims against EIN Cap, Inc., Alpha Capital Source, Inc., BMF Capital, LLC, FundKite, LLC, AKF, Inc., World

    Global Capital, LLC, Fox Capital Group, Inc., High Five Group, LLC, and Sutton Funding NY, Inc.; Case No. 21-cv-01792; Venue in the United States District Court for the Northern District of Illinois;

- Claims against Cody Neer; Case No. 8:21-cv-1999; Venue in the United States District Court for the Middle District of Florida, Tampa Division;

- Claims against SmithAmundsen, LLC; Case No. 1:22-cv-02830; Venue in the United States District Court for the Northern District of Illinois;

- Claims against Core Financial; Case No. 1:22-cv-4671; Venue in the United States District Court for the Northern District of Illinois;

- Judgment against Legacy Families in the amount of $154,038.50; and

- Judgment against JDS Consulting in the amount of $121,409.65

## VI. KNOWN CREDITORS OF THE RECEIVERSHIP ESTATE

As detailed above, the Receiver allowed $70,128,469.32 in investor claims, $1,118,248.04 in creditor claims, and $12,780.60 in employee claims, which remain outstanding as of this filing.

## VII. RECOMMENDATION FOR CONTINUATION OF RECEIVERSHIP AND CONCLUSION

The Receiver recommends the Receivership continue so she may continue to litigate to conclusion the Estate's claims against third-parties, insiders, affiliates, and former professionals, preserve and maximize the value of the Estate's assets for the benefit of the investors and creditors of the Estate, finalize the transfer and sale of the remaining digital assets, and make initial and final distributions to allowed claimants as the Court may approve.

The Receiver will continue to perform all other duties as mandated by the Appointment Order and update the Court on a quarterly basis as to the status and activities of the Receivership.

Respectfully submitted this 30th day of January, 2023.

                                        Respectfully submitted,

                                        */s/ Kenneth Dante Murena*
                                        Kenneth Dante Murena, Esq.
                                        Florida Bar No. 147486
                                        DAMIAN & VALORI LLP
                                        1000 Brickell Avenue, Suite 1020
                                        Miami, Florida 33131
                                        Telephone: (305) 371-3960
                                        Facsimile: (305) 371-3965
                                        Email: kmurena@dvllp.com
                                        *Counsel for Melanie E. Damian,*
                                        *Court-Appointed Receiver*

                                        *Admitted Pro Hac and General Admission*
                                        *to Northern District of Illinois*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic transmission via this Court's CM/ECF filing system on January 30, 2023, on all counsel or parties who have appeared in the above-styled action.

                                        */s/Kenneth Dante Murena*
                                        Kenneth Dante Murena, Esq.

                                        *Counsel for Melanie E. Damian,*
                                        *Court-Appointed Receiver*