**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 1:19-CV-08454 |
| : | |
| TODAYS GROWTH CONSULTANT INC. : | |
| (dba THE INCOME STORE) : | |
| : | |
| and : | |
| : | |
| KENNETH D. COURTRIGHT, III, : | |
| : | |
| Defendants. : | |

## RECEIVER'S FOURTEENTH STATUS REPORT

Melanie E. Damian, the court-appointed receiver ("Receiver") in the above-captioned enforcement action ("SEC Enforcement Action"), submits her fourteenth status report concerning the status of the Receivership, established pursuant to the Court's Temporary Restraining Order Freezing Assets and Imposing Other Emergency Relief [ECF No. 20] ("TRO") and Order Appointing Receiver ("Appointment Order") [ECF No. 19]. This interim report sets forth the Receiver's activities and efforts to fulfill her duties under the Appointment Order for the period from April 1, 2023, through June 30, 2023 (the "Reporting Period").

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................3

II.    PROCEDURAL BACKGROUND ...............................................................5

III.   STATUS AND ACTIVITIES OF THE RECEIVERSHIP ..............................6

      A.     *Marketing for Sale Remaining Assets of the Estate, Transferring Assets Related to Websites to Purchasers, and Resolving Issues with Certain Transferred Digital Assets* ............................................................7

      B.     *Responding to Investor Inquiries Regarding Court-Approved Claims Process* ...................................................................................8

      C.     *Pursuing Recovery Claims Against Third Parties, Affiliates, Insiders, Professionals and Financial Institutions* ..............................9

      D.     *Assistance of Receiver's Forensic Accountant and Tax Consultant* ...................14

      E.     *Courtright's Criminal Proceeding*.........................................................15

IV.   ESTATE'S CASH ON HAND, EXPENSES, AND DISBURSEMENTS.....................15

V.    KNOWN PROPERTY OF THE RECEIVERSHIP ESTATE .......................17

VI.   KNOWN CREDITORS OF THE RECEIVERSHIP ESTATE ....................18

VII.  RECOMMENDATION FOR CONTINUATION OF RECEIVERSHIP AND CONCLUSION ......................................................................................18

## I.     INTRODUCTION

Since her appointment on December 30, 2019, the Receiver, with the assistance of her retained professionals, worked diligently to continue to fulfill her duties and obligations as set forth in the Appointment Order and to preserve the assets and records of the receivership estate (the "Estate"). In particular, the Receiver took control of all known assets of Defendant Todays Growth Consultant Inc. d/b/a The Income Store ("TGC"), including the many websites and domains owned by TGC, its business operations, funds held in bank accounts, funds transferred to or in the possession of third parties, and other personal property of TGC.

Moreover, the Receiver investigated and litigated the Estate's claims against third-parties, insiders, and affiliates of the Defendants who had improperly received significant recoverable transfers from TGC and/or aided and abetted Courtright in the TGC scheme and claims against former professionals of TGC. One of the most significant of those third-party actions was against Heartland Bank and Trust Company ("Heartland Bank"). During the prior reporting period, the Receiver settled the Estate's claims against Heartland Bank for $9 million. *See* Receiver's motion to approve Heartland Bank settlement [ECF No. 276]. The Court approved this settlement on the record at a hearing on July 14, 2023. Upon this Court's entry of the Order approving that settlement agreement and incorporating the bar order, Heartland Bank will have 14 days to transfer the $9 million settlement amount to the Estate. The Estate will then have sufficient funds to make an interim monetary distribution in excess of $7 million. The investors frequently contact the Receiver's office to inquire as to the status of the approval of the Heartland Bank settlement and the initial distribution. The Receiver is hopeful to be able to make that distribution soon.

During the Reporting Period, the Receiver provided notice to all potential creditors of the Estate of the Receiver's settlement with Heartland Bank. The notice prompted creditors who had

not previously receive notice of the Claims Process to file late claims and seek to participate in the Claims Process and the Monetary Distribution Plan. The Receiver reviewed and allowed the majority of those late claims. The Receiver then prepared and filed an Amended Monetary Distribution Plan [ECF No. 283] seeking to amend the Receiver's original Monetary Distribution Plan filed during the Reporting Period [ECF No. 273] with an amended distribution list including the new claimants holding Allowed Claims. The Court orally approved that Amended Monetary Distribution Plan (pending entry of the Court's approval Order).

During the Reporting Period, the Receiver also expended significant efforts negotiating and finalizing settlements with Pepperdine University, Messiah Lutheran, and TGC's former accountants, and filed motions to approve those settlements. The Court approved the settlements with Pepperdine University and TGC's former accountant, bringing $905,000 into the Estate, and the motion to approve the settlement with Messiah Lutheran (which will bring into the Estate at least $487,000) remains pending before this Court.

Also, the Receiver continued to litigate her malpractice claims against the law firm that previously rendered legal services for TGC, including preparing briefs in connection with the firm's second motion to dismiss and motion for reconsideration of the court's denial of that motion, which motion for reconsideration the court denied after the reporting period.

Further, the Receiver and her counsel prepared for and attended the trial in the Receiver's action against Cody Neer and his company, who had received significant transfers from TGC without providing equivalent value. The parties submitted competing findings of fact and conclusions of law and are awaiting the court's adjudication.

Finally, the Receiver continued to utilize the online digital asset broker, Afternic, to sell two domains and to market for sale the remaining 95 domains of the Estate.

## II.     PROCEDURAL BACKGROUND

The Appointment Order entered on December 30, 2019, among other things, directs the Receiver to file with the Court within thirty (30) days after the end of each calendar quarter her report and recommendations regarding the status and activities of the Receivership Estate and TGC's business operations during the prior calendar quarter. *See* ECF No. 19. In particular, the Receiver's quarterly status reports are required to include: (1) a summary of the operations of the Receiver; (2) a summary of cash on hand, accrued administrative expenses, and the amount of unencumbered funds in the Estate; (3) a schedule of the Estate's receipts and disbursements; (4) a description of all known assets of the Estate; (5) a description of liquidated and unliquidated claims held by the Estate; (6) a list of all known creditors of the Estate; (7) a status of Creditor Claims Proceedings (once commenced); and (8) the Receiver's recommendations for a continuation or discontinuation of the receivership. *See* ECF No. 19 at pp. 21-22.

On January 30, 2020, as required under the Appointment Order, the Receiver filed her Initial Status Report, which described, among other things, the Receiver's activities and efforts to fulfill her obligations under the Appointment Order during the first thirty (30) days of the receivership. *See* ECF No. 45. Importantly, in her Initial Status Report, the Receiver concluded that TGC's business records confirm the allegations as set forth in the SEC's Complaint [ECF No. 1]. *See* EFC No. 45. Specifically, because TGC's revenue from all of the websites each month was significantly less than the monthly payment obligations to the investors and are thus not sufficient to cover both monthly payments to investors as well as TGC's monthly overhead expenses, the Receiver concluded that the long-term costs associated with maintaining and

preserving the digital assets of TGC was not in the best interest of the Receivership Estate.[1]  *See id*.  Based on this conclusion and the Receiver's analysis of the equities of all interested parties, including the investors, the receipts, and expenses of TGC's operations and of the Receivership Estate, and likely recoveries of the Estate, the Receiver outlined her proposal to promptly seek Court approval for a claims process and partial distribution plan which provided for, among other things, the transfer of websites to investors electing to receive them in lieu of monetary distributions.  *See id*.  On February 28, 2020, the Receiver filed her Claims Process Motion.  *See* ECF No. 53.  The Court granted the Receiver's Claims Process Motion on November 30, 2020 [ECF No. 109] and the Receiver implemented the plan as set forth therein.

The Receiver's subsequent status reports detailed, among other things, the Receiver's continued efforts to carry out her duties and obligations as set forth in the Appointment Order including, without limitation, her efforts to preserve, maintain, and recover the assets and pursue claims of the Estate.  *See* ECF Nos. 81, 101, 115, 127, 160, 172, 184, 202, 220, 233, 242 (supplementing 233), 247, and 265.

### III.  STATUS AND ACTIVITIES OF THE RECEIVERSHIP

The Receiver, with the assistance of her professionals, continues to perform all duties and obligations as set forth in the Appointment Order.  During the Reporting Period, the Receiver focused her attention and resources on:

> (A) marketing for sale the remaining digital assets of the Estate, transferring social media accounts related to websites to purchasers, and resolving issues with certain transferred digital assets;

---

[1] Indeed, the Receiver detailed in her quarterly status reports the significant expenses associated with merely maintaining the assets, including retaining a skeletal group of IT professionals and the ongoing carrying costs of the domains and websites and eventually, as a cost-saving measure, eliminating the outside IT group and moving the remaining day-to-day operations to the Receiver's in-house team.  *See* ECF Nos. 45, 81, 101, 115, 127, 160, 172, 184, 202, 220, 233, 247, and 265.

(B) responding to inquiries from, and addressing issues raised by, investors who participated in the Court-approved claims process regarding the digital assets they received in lieu of monetary distributions and/or the status of the SEC Enforcement Action, the Heartland Bank settlement, and the Receivership;

(C) responding to inquiries from potential claimants seeking to file late claims, reviewing and approving those claims and seeking to amend the monetary distribution plan to allow those late claimants to participate in the Court-approved initial distribution;

(D) continuing to litigate pending recovery actions against third-parties, insiders, and affiliates of TGC who received significant transfers from TGC without providing reasonably equivalent value, and/or facilitated and assisted TGC and Courtright to commit the alleged fraud that is the subject of the SEC Enforcement Action;

(E) obtaining Court approval of various settlements of the Receiver's claims against third parties;

(F) carrying out the Court-ordered noticing procedures for the Heartland Bank settlement agreement and proposed bar order and preparing for the final hearing on that settlement; and

(G) working with her forensic accountant to analyze the reconstructions of accounts of TGC and perform damages calculations and other analyses to support the Receiver's claims against third parties, insiders, affiliates, and former professionals of TGC.

### A. *Marketing for Sale Remaining Assets of the Estate, Transferring Assets Related to Websites to Purchasers, and Resolving Issues with Certain Transferred Digital Assets*

During the Reporting Period, the Receiver and her counsel continued to maintain and market for sale the Estate's remaining digital assets, worked to finalize the transfer of purchased websites and domains and all content related to those websites and domains, and worked on resolving issues related to certain transferred digital assets and related social media accounts.

As previously reported, the Receiver listed for sale and sold additional domains through the third-party broker service, Afternic. During the Reporting Period, the Receiver sold two

websites via Afternic for a total of $2,435.00 (net gain of $2,049.75 to the Estate after commissions/fees). The Estate currently maintains 95 domains in its GoDaddy account, all of which are listed for sale.

### B. Responding to Investor Inquiries Regarding Court-Approved Claims Process

As previously reported, in accordance with this Court's Memorandum and Opinion Order granting the Receiver's Claims Process Motion [ECF No. 109], on December 15, 2020, the Receiver sent Claims Packages to 832 potential claimants (including government taxing agencies) via email and another 24 Claims Packages via U.S. Mail or Federal Express. Shortly after sending out the Claims Packages, the Receiver and her professionals began receiving, organizing, and processing completed claim forms that claimants had sent to the Receiver's email address established for the claims process (IncomeStoreClaims@dvllp.com).

Pursuant to her Final Determinations of all claimants' claims (including the late filed claims), the Receiver approved claims for monetary distributions as follows: $71,970,801.36 in investor claims, $1,118,248.04 ($760,552.17 of which is subordinated to the claims of investors pursuant to an agreed order) in creditor claims, and $17,110.20 in employee/independent contractor claims.

When the Court enters its Order approving the settlement between the Estate and Heartland Bank, as approved orally at the July 14, 2023 hearing on that settlement, Heartland Bank will pay the Estate $9 million in settlement proceeds. *See* Receiver's motion to approve Heartland Bank settlement [ECF No. 276]. The Estate will then have sufficient funds to make an interim monetary distribution in excess of $7 million in accordance with the Court-approved Monetary Distribution Plan [ECF No. 273] as amended in the Receiver's Motion to Amend Monetary Distribution Plan [ECF No. 283] which add allowed late filed claims to the distribution list. The Receiver's proposed

Monetary Distribution Plan, as amended, provides for a *pro rata* distribution of funds to claimants holding Allowed Claims totaling $72,355,659.66, providing a 9.94% recovery to those claimants.[2]

During the Reporting Period, the Receiver continued to regularly communicate with investors through the email accounts, telephone number, and Receivership website established to provide information to, and address the questions and concerns of, investors. In particular, through the email accounts established for the Receivership (IncomeStore@dvllp.com and IncomeStoreClaims@dvllp.com) and the telephone number set up soon after the commencement of the Receivership, the Receiver's professionals responded to investors' communications regarding (i) the Court-approved claims process and the status and timing of the eventual monetary distributions, (ii) updated investor contact information, (iii) transferring websites, domains, and corresponding social media channels to investors pursuant to their elections to receive same in lieu of monetary distributions in the claims process, (iv) the assets of the Estate sold at the online auction sale and directly to third parties and the results of the sales, and (v) the SEC Enforcement Action and Receivership in general.

## C.    *Pursuing Recovery Claims Against Third Parties, Affiliates, Insiders, Professionals, and Financial Institutions*

During the Reporting Period, the Receiver and her counsel continued to litigate the Estate's actions against third-parties, affiliates, and insiders, commenced during prior reporting periods, including by conducting discovery, working with her retained expert to finalize and serve expert

---

[2] The subordinated creditor claim for $760,552.17 and the $7.8 million in claims that were satisfied through the return of investor websites are not included in the total Allowed Claims amount. Also, claims totaling $310,195.96, which were satisfied through the class action styled *PLB Investments LLC, et al. v. Heartland Bank and Trust Company*, 1:20-cv-1023 (N.D. Ill.), were withdrawn and are not included in the Allowed Claims total.

witness reports, and preparing and responding to dispositive motions, in accordance with applicable pre-trial scheduling orders.[3]

During the prior reporting period, the Receiver reached a settlement of the Estate's claims against Heartland Bank, Case No. 1:20-cv-07819, pending in the United States District Court for the Northern District of Illinois, in conjunction with a settlement between certain TGC investors who had commenced a separate action against Heartland Bank. The settlement provided for a $9 million payment by the Bank to the Estate in exchange for the entry of an order barring all potential claims that may be asserted by TGC's investors and other creditors against Heartland Bank. The Receiver filed a Motion to Approve the Settlement with Heartland Bank [ECF No. 256] together with the proposed Settlement Agreement (Exhibit A thereto) and a proposed approval and bar Order (Exhibit B thereto). Also, during the prior reporting period, on March 16, 2023, the Court held a preliminary hearing on the Receiver's Motion. After the hearing, pursuant to the Court's instructions, the Receiver submitted to the Court a proposed Order preliminarily approving the proposed settlement and bar order, establishing procedures for notifying all potential creditors of the settlement and bar order, setting the deadline to submit objections to same, and setting a final hearing on July 14, 2023, to approve that settlement. *See* ECF No. 274. During the Reporting Period, the Receiver complied with all of the Court-ordered procedures for notifying all potential creditors of the settlement and proposed bar order, the deadline to submit objections, and the final hearing date, time, and place.

---

[3] As detailed in the Receiver's prior Status Reports, to preserve the minimal funds in the Receivership Estate at the time, the Receiver and her counsel did not bill the Estate for the formulation and litigation of these recovery claims. Rather, on September 16, 2020, the Receiver filed her Motion for Approval of Contingency Fee Arrangement for such claims. *See* ECF No. 99. And on November 5, 2020, the Court granted that Motion. *See* ECF No. 103.

After the Reporting period, at the July 14, 2023 final hearing on the settlement with Heartland Bank, the Court, noting that no objections to the settlement or bar ordered were submitted, orally approved the settlement granting the Receiver's Motion to approve the settlement and enter the bar order. At the Court's request, the Receiver submitted a proposed approval and bar order to the Court for entry. The Receiver now awaits the entry of that approval and bar order, which will trigger Heartland Bank's obligation to make the $9 million settlement payment to the Estate. Upon receiving the settlement payment, the Receiver will hold the funds for 90 days prior to making the initial distribution in excess of $7 million to the allowed claimants, as ordered by the Court. *See* ECF Nos. 274 (Order Preliminarily Approving Settlement).

During the Reporting Period, the Receiver also advanced the Estate's claims for recovery of fraudulent transfers and unjust enrichment against Cody Neer and Bucks of America, Inc., Case No. 8:21-cv-1999, pending in the United States District Court for the Middle District of Florida, Tampa Division. Those defendants were vendors of websites and website development and management services, used in furtherance of the alleged fraudulent scheme, which failed to provide reasonably equivalent value in exchange for the more than $2.4 million in fraudulent transfers they had received from TGC. During the Reporting Period, the parties prepared for and attended a bench trial. The parties await entry of the Court's verdict in this matter.

In addition, the Receiver continued to pursue the Estate's claims for recovery of fraudulent transfers, breaches of contracts, and aiding and abetting Courtright's alleged fraud against certain merchant cash advance companies, including EIN Cap, Inc., Alpha Capital Source, Inc., BMF Capital, LLC, Fundkite, LLC, AKF, Inc., World Global Capital, LLC, Fox Capital Group, Inc., High Five Group, LLC, and Sutton Funding NY, Inc., Case No. 1:21-cv-01792, pending in the United States District Court for the Northern District of Illinois. Those defendants provided cash

advances to TGC and then improperly swept investor funds, rather than TGC's operating receivables, to repay themselves. During prior reporting periods, all deadlines in that case were abated while the Court considered the Defendants' Motion to Sever the suit into eight separate lawsuits. *See* Case No. 1:21-cv-01792, ECF No. 95. During the Reporting Period, the Court denied that Motion allowing the lawsuit to proceed against all Defendants. *See id.* at ECF No. 112. The parties have propounded written discovery and the Receiver has responded to Defendants' discovery requests and produced all responsive documents in the Estate's possession. Defendants have not yet responded to the Receiver's discovery requests or produced any documents despite expiration of the Court set deadline to do so. The Receiver intends to prepare a motion to compel Defendants to respond and produce documents if Defendants do not comply with their obligations in short order. The Receiver is also working with Defendants to set the depositions of fact witnesses and is preparing a joint status report to the Court to advise the Court of the progress of discovery through July 31, 2023.

The Receiver also advanced the Estate's claims for recovery of fraudulent transfers, aiding and abetting Courtright's alleged breaches of fiduciary duties, and unjust enrichment against William Courtright and Courtright Consulting, Inc., Case No. 2:20-cv-01012, pending in the United States District Court for the Northern District of Illinois. The Receiver seeks to recover the nearly $2.3 million that those defendants were paid, and other damages based on the significant investor losses resulting from their efforts to lure in investors to TGC. During the prior reporting period, the parties completed fact and expert discovery. During the Reporting Period, the parties prepared and filed their Daubert motions which are pending before the Court. The Court advised the parties that it will not set a deadline to file dispositive motions until it rules on the Daubert motions.

During the Reporting Period, the Receiver also pursued the Estate's claims for recovery of fraudulent transfers against Pepperdine University, Case No. 1:21-cv-02371, pending in the United States District Court for the Northern District of Illinois. The Receiver negotiated a favorable settlement requiring a $170,000 payment to the Estate, which this Court approved on May 23, 2023. *See* ECF No. 275. Pepperdine made the settlement payment on June 2, 2023, and this matter has been closed.

The Receiver also continued to pursue the Estate's claims for recovery of fraudulent transfers against Messiah Lutheran Church, Case No. 1:20-cv-07817, pending in the United States District Court for the Northern District of Illinois. Messiah Lutheran received transfers of funds from TGC without providing any value in return. During the Reporting Period, the Receiver negotiated a favorable settlement for at least $487,000 to be paid to the Estate. Upon entry of the Court's Order approving the settlement, Messiah Lutheran is required to pay $187,000 to the Estate and a judgment against the Church for $300,000 will be entered but the Receiver cannot immediately execute on it. If Messiah Lutheran does not pay the $300,000 judgment within 90 days or by November 1, 2023, whichever is later, then the judgment increases to $400,000, and the Receiver may execute on that judgment. Shortly after the close of the Reporting Period, the Receiver filed a motion for approval of that settlement, which is pending before this Court. *See* ECF No. 291.

Further, the Receiver continued to pursue the Estate's claims for professional malpractice against SmithAmundsen, LLC, Case No. 1:22-cv-02830, pending in the United States District Court for the Northern District of Illinois. During the prior reporting period, on March 10, 2023, the SmithAmundsen filed its Motion to Dismiss Second Amended Complaint [Case No. 1:22-cv-02830 at ECF No. 63], and, on March 29, 2023, the Receiver filed her Response to that Motion

[*id*. at ECF No. 69]. During the Reporting Period, the Court denied Defendant's Motion to Dismiss Second Amended Complaint [*id*. at ECF No. 74]. Defendant then moved for reconsideration of that denial [*id*. at ECF No. 74], and after the close of the Reporting Period, the Court denied that motion for reconsideration [*id*. at ECF No. 83].

Finally, the Receiver advanced the Estate's claims for professional malpractice, aiding and abetting Courtright's alleged breaches of fiduciary duty, unjust enrichment, and recovery of fraudulent transfers against Core Financial, Case No. 1:22-cv-4671, pending in the United States District Court for the Northern District of Illinois. During the Reporting Period, the parties attended a mediation on May 18, 2023, and reached a settlement requiring Core Financial to pay $735,000 to the Estate. The Receiver filed a Motion to approve that settlement, which this Court approved on June 13, 2023. *See* ECF Nos. 276 (Motion) and 280 (Approval Order). The Estate received that settlement payment on June 23, 2023, and this matter has been closed.

### D. Assistance of Receiver's Forensic Accountant and Tax Consultant

During the initial reporting period, the Receiver retained Kapila Mukamal ("Kapila") as her forensic accountant and tax consultant to assist her to fulfill her duties under the Appointment Order. Kapila assisted the Receiver with an in-depth investigation of TGC's former business operations, accounting and banking records, and transactions involving investors, creditors, third-parties, insiders, and affiliates.

During the Reporting Period, Kapila provided valuable support to the Receiver in both the enforcement action as the Receiver's retained forensic accountant and tax consultant as well as

important advice and analysis as the Receiver's retained expert witness[4] in the Estate's recovery actions against former professionals, third-parties, insiders, affiliates, and financial institutions. In particular, Kapila, as the forensic accountants, prepared analyses and provided input as requested by the Receiver and her counsel for purposes of recovery actions and the processing late-filed claims in the claims process. Kapila also provided expert testimony in two recovery actions, and the Receiver's tax consultant continued to provide tax services to the Receiver.

### E. Courtright's Criminal Proceeding

During the Reporting Period, the Receiver continued to monitor Courtright's criminal proceeding styled *United States of America v. Kenneth D. Courtright*, Case No. 20-CR-77, for which the jury trial was held. Shortly after the Reporting Period, Defendant Courtright was convicted on all counts alleged against him.

### IV. ESTATE'S CASH ON HAND, EXPENSES, AND DISBURSEMENTS

As of the end of the Reporting Period (June 30, 2023), the Estate held a total of $1,618,645.95 in cash on hand, comprising, among other things, the net proceeds of the sale of the Estate's digital assets, funds generated from TGC's business operations (including residual website revenue deposited in TGC's operating accounts), and settlement funds received from third-parties, insiders, affiliates, and former counsel for TGC against whom the Receiver pursued claims. *See* Standardized Fund Accounting Report reflecting starting and ending balances, and receipts and disbursements, of the Receiver's fiduciary account, attached hereto as **Exhibit A**. The

---

[4] Pursuant to the parties' Stipulation and Order Concerning the Receiver's Payment of Expenses in the Ancillary Actions [ECF No. 228] and the Court's Order granting same [ECF No. 229], the Receiver was authorized to retain Kapila as her expert witness in the Ancillary Actions *nunc pro tunc* to January 1, 2022. Further, the Receiver's Lead Counsel, Damian & Valori, LLP agreed to advance payment for all reasonable expenses incurred in connection with the Ancillary Actions, including the expenses of Kapila or any other retained expert(s) to manage the expenses of the Estate. *See* ECF No. 228.

Receiver deposited such funds in her fiduciary account for the Receivership Estate at City National Bank in Miami, Florida.

On March 2, 2022, the Court had entered the parties' Stipulation and Order Concerning Receiver's Interim Fee Applications that, among other things, set forth the timing and procedure for payment of the Receiver's and her professionals' outstanding administrative fees and further governing the protocol for application and payment of the Receiver's and her professionals' administrative fees set forth in all future fee applications. *See* ECF No. 191. In conformance with these procedures, during the Reporting Period, on May 15, 2023, the Receiver filed her Thirteenth Interim Application for an Order Approving and Authorizing Payment of Fees and Expenses of Receiver and Her Professionals [ECF No. 269] (the "13th Fee Application"), seeking approval and payment of certain fees and costs incurred during the first quarter of 2023. During the Reporting Period, on June 13, 2023, the Court granted the Receiver's 13th Fee Application. *See* ECF No. 279. Pursuant to the Court's Order, the Receiver disbursed $1,223.20 to the Receiver's Illinois counsel and $4,079.75 to the Receiver's forensic accountant, after the close of the Reporting Period.

During the next reporting period, the Receiver will file her Fourteenth Interim Application for an Order Approving and Authorizing Payment of Fees and Expenses of Receiver and Her Professionals, seeking approval and payment of the fees and costs incurred by certain of the Receiver's professionals in connection with fulfilling the Receiver's duties under the Court's Orders during this Reporting Period.

## V. KNOWN PROPERTY OF THE RECEIVERSHIP ESTATE

As of the end of the Reporting Period (June 30, 2023), the Receiver was in possession, custody, or control of the following assets of the Receivership Estate:

- $1,618,645.95 in cash on hand in the Receiver's fiduciary account and TGC's operating accounts.

- 95 domain names (precise value currently unknown).

- Claims, Pending Settlements, and Judgments against third-parties, insiders, affiliates, professionals, and a financial institution for fraudulent transfers, aiding and abetting fraud and breach of fiduciary duty, legal and accounting malpractice, and other claims, including the following:

  - Settlement with Heartland Bank & Trust Company; Case No. 1:20-cv-07819; Venue in the United States District Court for the Northern District of Illinois ($9 million settlement orally approved by this Court and pending entry of the final approval and bar order);

  - Claims against William Courtright and Courtright Consulting, Inc.; Case No. 2:20-cv-01012; Venue in the United States District Court for the Northern District of Illinois;

  - Settlement with Messiah Lutheran Church; Case No. 1:20-cv-07817; Venue in the United States District Court for the Northern District of Illinois ($487,000 settlement pending this Court's approval);

  - Claims against EIN Cap, Inc., Alpha Capital Source, Inc., BMF Capital, LLC, FundKite, LLC, AKF, Inc., World Global Capital, LLC, Fox Capital Group, Inc., High Five Group, LLC, and Sutton Funding NY, Inc.; Case No. 21-cv-01792; Venue in the United States District Court for the Northern District of Illinois;

  - Claims against Cody Neer and Bucks of America, Inc.; Case No. 8:21-cv-1999; Venue in the United States District Court for the Middle District of Florida, Tampa Division (pending final verdict from bench trial conducted in early May 2023);

  - Claims against SmithAmundsen, LLC; Case No. 1:22-cv-02830; Venue in the United States District Court for the

17

Northern District of Illinois;

o Judgment against Legacy Families in the amount of $154,038.50; and

o Judgment against JDS Consulting in the amount of $121,409.65.

## VI. KNOWN CREDITORS OF THE RECEIVERSHIP ESTATE

As detailed above, after allowing the late filed claims which were reviewed and approved during the Reporting Period, the Receiver has allowed a total of $71,970,801.36 in investor claims, $1,118,248.04 in creditor claims ($760,552.17 of which is subordinated to the claims of investors pursuant to an agreed order), and $17,110.20 in employee/independent contractor claims, which remain outstanding as of this filing.

## VII. RECOMMENDATION FOR CONTINUATION OF RECEIVERSHIP AND CONCLUSION

The Receiver recommends the Receivership continue so she may continue to litigate to conclusion the Estate's three remaining actions against third-parties, insiders, and former counsel for TGC, obtain Court approval of, and collect the settlement proceeds pursuant to, the settlement with Messiah Lutheran, collect the settlement amount from Heartland Bank, preserve and maximize the value of the Estate's assets for the benefit of the investors and creditors of the Estate, finalize the transfer and sale of the remaining digital assets, and make initial and final distributions to allowed claimants in accordance with the Monetary Distribution Plan, as amended, and any further order of this Court.

The Receiver will continue to perform all other duties as mandated by the Appointment Order and update the Court on a quarterly basis as to the status and activities of the Receivership.

Respectfully submitted this 31st day of July, 2023.

Respectfully submitted,

/s/ Kenneth Dante Murena
Kenneth Dante Murena, Esq.
Florida Bar No. 147486
DAMIAN & VALORI LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
Email: kmurena@dvllp.com
*Counsel for Melanie E. Damian,*
*Court-Appointed Receiver*

*Admitted Pro Hac and General Admission*
*to Northern District of Illinois*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic transmission via this Court's CM/ECF filing system on July 31, 2023, on all counsel or parties who have appeared in the above-styled action.

/s/Kenneth Dante Murena
Kenneth Dante Murena, Esq.

*Counsel for Melanie E. Damian,*
*Court-Appointed Receiver*